UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:09-CV-10606-JGD

BRUCE PECK,
        Plaintiff,

v.

CITY OF BOSTON
        Defendant.

## DEFENDANT CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

Now comes the Defendant, City of Boston ("the City") and moves pursuant to Fed.R.Civ.P. 56 for summary judgment on all of Plaintiff, Bruce Peck's ("Plaintiff") claims against it. This is an action for declaratory and injunctive relief brought pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Plaintiff brings this complaint under 42 U.S.C. § 1983, alleging that City policies concerning street performers in historic Faneuil Hall violated his First Amendment rights. The City is entitled to summary judgment on all claims as discovery affirmatively demonstrates that Mr. Peck cannot establish a violation of his constitutional rights and, furthermore, the Plaintiff has failed to establish a policy, custom or practice that rises to the level of a constitutional violation on the part of the City.

## II.    STANDARD OF REVIEW

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment has a unique place in federal civil litigation.  Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir.1992).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Once the moving party shows "that there is an absence of evidence to support the nonmoving party's position…the burden shifts to the nonmoving party to establish the existence of at least one factual issue that is both genuine and material."  Mitchell v. City of Boston, 130 F.Supp.2d 201, 208 (D. Mass. 2001) (internal citations and quotations omitted).  "On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion."  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).  "Not every discrepancy in the proof is enough to forestall a properly supported motion for summary judgment."  Id.  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  Mitchell, 130 F.Supp.2d at 208.

## III.    ARGUMENT

The Plaintiff alleges that City of Boston's polices and resulting action deprived him of his rights under the Free Speech Clause of the First and Fourteenth Amendments to the United States Constitution.  In order to address public safety and security concerns, the City of Boston implemented a policy that limited street performance in the Dock

Square area of Faneuil Hall to a particular designated location. The time, place and manner restrictions instituted by the City of Boston were content neutral, narrowly tailored to serve a significant a City interest, and left open alternative channels of communication. Without any evidence of a City of Boston custom, practice or policy that violated his rights under the Free Speech Clause, summary judgment must enter for the City of Boston.

    **A.**     **THE CITY PLACED REASONABLE TIME, PLACE, AND MANNER LIMITATIONS UPON STREET PERFORMANCE IN DOCK SQUARE.**

        **1.**     **Standard for government restrictions on speech.**

Supreme Court jurisprudence delineates "three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 802 (1985). A traditional public forum constitutes a location that "by long tradition or by government fiat ha[s] been devoted to assembly and debate." Perry Education Association v. Perry Local Educators' Association, 460 U.S. 37, 45 (1983). Government may impose reasonable restrictions on the time, place, or manner of protected speech, even of speech in a public forum, so long as restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels of communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) quoting Clark v. Cmty. For Creative Non-Violence, 468 U.S. 288, 293 (1984).

The City of Boston owns and manages the Dock Square section of Faneuil Hall. SOF ¶ 16. In the summer of 2008, the City placed restrictions on the place of protected

speech. Specifically, it limited street performance in the Dock Square section of Faneuil Hall to a designated area of approximately 5,000 square feet. SOF ¶ 27. This particular piece of property arguably constitutes a public forum. Accordingly, any City restrictions imposed on the time, place or manner of speech must be content neutral, narrowly tailored to serve a significant a City interest, and leave open sufficient channels of communication. Ward, 491 U.S. at 791.

### 2. The Regulation of Street Performance in Dock Square Was Content Neutral.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place or manner cases in particular, is whether the government has adopted a regulation of speech because of a disagreement with the message it conveys." Ward, 491 U.S. at 791. Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech." Cmty. For Creative Non-Violence, 468 U.S. at 293.

The City implemented a policy designating street performances to a specific area in Dock Square for public safety reasons. There is no evidence that City implemented this policy because of a disagreement with the message conveyed by street performers. See Hill v. Colorado, 530 U.S. 703, 719 (2000). Rather, the City regulated the place where some speech may occur. Id. As Mr. Peck himself testified, street performers were instructed to perform in a designated area near the Sam Adams statue in the Faneuil Hall area of Boston without any regard to the message or method of communication. SOF ¶ 29.

4

### 3. Regulation of Street Performance in Dock Square Was Narrowly Tailored to Serve an Important Government Interest and Left Open Ample Alternative Channels of Communication.

Supreme Court jurisprudence recognizes the legitimate government interest in public safety and has stated that it "is a traditional exercise of the States' police powers to protect the health and safety of their citizens." Hill, 530 U.S. at 715. The narrow tailoring requirement is satisfied when "a substantial government interest…would be achieved less effectively absent the regulation" but the regulation does not "burden substantially more speech than is necessary to further the government's legitimate interests." Coalition to Protest the Democratic National Convention v. City of Boston, 327 F.Supp.2d 61, 70 (D. Mass. 2004).

In response to security concerns related to Faneuil Hall, the large number of people who pass through this particular area of Boston, and accessibility issues, the City implemented several measures designed to address these matters. SOF ¶ 18. The City erected metal barricades around the perimeter of the Faneuil Hall building to ensure that fire lanes remained open and to protect the integrity of the building itself. SOF ¶ 24. Street performers were asked to vacate the areas between the metal barricades and the building. SOF ¶ 25. The City designated a particular area for street performance in the Dock Square area of Faneuil Hall. SOF ¶ 17. The designated area for street performance in the Dock Square area of Faneuil Hall is approximately 5,000 square feet. SOF ¶ 27.

A regulatory plan aimed at addressing public safety concerns and pedestrian access certainly constitutes an important governmental interest. The plan did have an incidental effect on expression in the Dock Square area of Faneuil Hall. After the City implemented the measures set fort above, street performance was limited to a particular

area. However, that area constituted a zone of property that allowed ample alternative channels for communication.

### B. THE CITY OF BOSTON CANNOT BE HELD LIABLE FOR VIOLATION OF 42 U.S.C. § 1983.

#### 1. Standard for Municipal Liability Under 42 U.S.C. § 1983

Peck sets forth a claim, pursuant to 42 U.S.C. § 1983, against the City of Boston. According to 42 U.S.C. § 1983, any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

In order for liability to attach to the City under 42 U.S.C. § 1983, the Plaintiff must establish that an official City policy or custom inflicted constitutional injury. Monell v. New York Dep't. of Social Services, 436 U.S. 658, 694 (1978); Bibbo v. Mulhern, 621 F.Supp.1018, 1027 (D. Mass. 1985). The two-step analysis under Monell necessary to establish liability is: (1) that the municipality had an unconstitutional policy, custom, or practice; and (2) that the custom, policy, or practice was the moving force behind the constitutional violation. Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005). A municipality may not be held liable for the constitutional violations of its employees based upon a theory of respondeat superior. Baron v. Suffolk Cty. Sheriff's Dept., 402 F.3d 225, 236 (1st Cir. 2005). Rather, "it is when execution of a government's policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Monell at 694.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 824-25 (1985). "A single incident of misconduct, without other evidence, cannot provide the basis for municipal liability under [section] 1983." Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) (emphasis added); Armstrong v. Lamy, 938 F.Supp. 1018, 1036-37 (D. Mass. 1996).

### 2. There is No Evidence of a City of Boston Custom, Practice or Policy that Violated Plaintiff's Rights under the Free Speech Clause.

The City of Boston implemented a policy restricting street performance within the Dock Square area of Faneuil Hall to a designated area. There is no evidence that this policy caused constitutional injury to Mr. Peck. To the extent that Mr. Peck alleges a "crackdown" implemented by the City of Boston, he has no evidence that said "crackdown" is an outgrowth of a City custom, policy or practice. Without a nexus between the policy and Mr. Peck's alleged constitutional violation, he cannot establish a § 1983 violation. Accordingly, the City is entitled to summary judgment.

Beginning on July 24, 2008, as street performers arrived to work in the Dock Square area of Faneuil Hall, street performers, including Mr. Peck, were instructed to perform in a designated area near the Sam Adams statue in the Dock Square area of Faneuil Hall without regard to the type, length, or volume of the show. SOF ¶¶ 28-29. The police informed the street performers, including Mr. Peck, that if they left the designated area they were subject to arrest. SOF ¶ 30.

Mr. Peck never performed in the area designated for street performers. SOF ¶ 32. Any knowledge that Mr. Peck has concerning street performances in the designated area is based on conversations with other street performers. SOF ¶ 34. He has no personal knowledge as to whether or not the designated area was regulated. SOF ¶ 35. Mr. Peck's understanding that the designated area was being enforced is based on conversations with other performers. SOF ¶ 36. He was never arrested by the police. SOF ¶ 41. Nor did the police arrest any other street performer for failure to perform in the designated area. SOF ¶ 42.

On July 27, 2008, Mr. Peck tried to stand in his preferred location where he had previously done street performance. SOF ¶ 37. The police prevented Peck from performing. SOF ¶ 39. When Mr. Peck tried to stand in this preferred location, he was surrounded by two unnamed police officers. SOF ¶ 39. The unnamed police officers threatened Peck with arrest. SOF ¶ 41. Again, Mr. Peck was never arrested by the police. SOF ¶ 41.

While Mr. Peck asserts that street performers were subject to arrest if they failed to perform in the designated area, he was never arrested nor is there any evidence that any other street performer was arrested for inability to perform in the designated area. SOF ¶¶ 30; 41-42. Mr. Peck alleges unconstitutional conditions in the designated area, but he does not have any firsthand knowledge of said conditions. SOF ¶¶ 32-36. In short, Mr. Peck has failed to demonstrate a nexus between the City's policy on street performance locations in the Faneuil Hall area, the alleged crackdown and any constitutional violations. Conjecture is not enough to establish a City of Boston custom, policy or practice.

## CONCLUSION

For the reasons set forth above, the City of Boston respectfully requests that this Honorable Court allow its Motion for Summary Judgment.

                                          Respectfully submitted,

                                          DEFENDANT CITY OF BOSTON
                                          William F. Sinnott
                                          Corporation Counsel

                                          By its attorneys:

                                          /s/ Sean P. Nehill
                                          Sean P. Nehill
                                          BBO# 665738
                                          Alexandra Alland
                                          BBO# 652152
                                          Assistant Corporation Counsel
                                          City of Boston Law Department
                                          Room 615, City Hall
                                          Boston, MA 02201
                                          sean.nehill@cityofboston.gov
                                          alexadra.alland@cityofboston.gov
                                          (617) 635-4049 (Nehill)
                                          (617) 635-4031 (Alland)

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 23, 2010.

<u>/s/ Sean P. Nehill</u>  
Sean Nehill
